IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> AURORA MANALASTAS SELDNER, d/b/a AURORAS RESTAURANT & SNACK BAR, <br><br> Defendant. | NO. C10-5137 TEH <br><br> ORDER GRANTING IN PART MOTION FOR DEFAULT JUDGMENT |

This matter comes before the Court on Plaintiff's motion for default judgment. Defendant did not file an opposition to the motion. After carefully reviewing Plaintiff's written arguments, the Court concludes that oral argument is unnecessary and VACATES the hearing scheduled for July 11, 2011. The Court now GRANTS IN PART Plaintiff's motion as discussed below.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff J & J Sports Productions, Inc. is an international distributor of sports and entertainment programming. Defendant Aurora Manalastas Seldner d/b/a Aurora's Restaurant & Snack Bar has not appeared before this Court or otherwise responded.

Plaintiff purchased the domestic commercial exhibition rights to broadcast *"Firepower": Manny Pacquiao v. Miguel Cotto WBO Welterweight Championship Fight*

1 *Program* ("Program") nationwide on November 14, 2009. The Program included the main
2 event between Manny Pacquiao and Miguel Cotto, as well as undercard bouts (preliminary
3 bouts which take place before the main fight), color commentary, and televised replay.
4 Plaintiff granted limited sub-licenses to commercial establishments in California and the rest
5 of the United States for the right to publicly show the Program for the enjoyment of their
6 patrons. The transmission of the Program was encrypted and made available only to those
7 commercial locations which had paid the requisite license fees to exhibit the Program.

8       On Saturday, November 14, 2009, investigator David Palmer observed the exhibition
9 of the Program at Aurora's Restaurant and Snack Bar, which had not purchased a license to
10 air the Program. Palmer Aff. 1. Palmer witnessed the Program being displayed on three
11 televisions mounted from the ceiling, and noted that Defendant's establishment had capacity
12 of 50 persons. *Id.* at 2. Palmer did not pay a cover charge to enter. *Id.* at 1. There was no
13 premium charged on food and beverage, nor did Palmer observe any advertising for the
14 airing of the Program. *Id.* Palmer took head counts during his time in the establishment,
15 counting between thirty-five and fifty-one persons. *Id.* at 2. After ordering a Diet Coke and
16 watching round one of the Program, Palmer left the Defendant's establishment. *Id.* at 1.
17 Palmer made no observation of a satellite dish or cable box. *Id.* at 1-2.

18       Plaintiff filed suit on November 12, 2010, alleging violation of 47 U.S.C. §§ 553 and
19 605, and common-law conversion. Defendant received substituted service on March 20,
20 2011. Defendant did not respond, and default was entered on April 25, 2011. Plaintiff
21 moved for default judgment on May 25, 2011, seeking damages under 47 U.S.C. § 605 and
22 conversion.

23

24 **LEGAL STANDARD**

25       "When a party against whom a judgment for affirmative relief is sought has failed to
26 plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must
27 enter the party's default." Fed. R. Civ. P. 55(a). A default judgment may be entered upon
28 application to the court. Fed. R. Civ. P. 55(b)(2). At the default judgment stage, well-

pleaded factual allegations are deemed to have been admitted and are sufficient to establish a defendant's liability, but allegations of the complaint relating to damages are not assumed to be true. *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977). "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

**DISCUSSION**

Plaintiff requests a judgment in its favor in the amount of $110,000 for violation of 47 U.S.C. §§ 605(e)(3)(B)(iii) and (c)(ii), and $2,200 for tortious conversion. Plaintiff also requests an award of costs and attorney's fees. The Court addresses each request in turn below.

**I. 47 U.S.C. §§ 553 and 605**

Plaintiff's complaint and application for default judgment request damages under 47 U.S.C. §§ 605 and 553, as well as for common law conversion, but Plaintiff's memorandum in support requests damages only for the claim of conversion and under 47 U.S.C. § 605, including costs and attorney's fees. Section 605 prohibits the interception of radio or satellite transmissions, whereas § 553 prohibits the interception of signals over a cable system. Plaintiff has not submitted any evidence of the manner in which Defendant intercepted the Program (i.e. by use of a cable box or a satellite dish). Plaintiff does not specifically allege interception by either satellite dish or by cable box, but this Court agrees with other courts that have found that it is unlikely to have been both. *E.g., J & J Sports Prods., Inc. v. Guzman*, No. C08-5469 MHP, 2009 WL 1034218, at *2 (N.D. Cal. Apr. 16, 2009) (finding it unlikely a perpetrator would commit double piracy by using both a cable box and a satellite dish to broadcast a single simultaneous program). Courts in this district have held that when the method of interception is not alleged, damages are more appropriately analyzed under § 553 because a cable box is more easily hidden. *Id.*; *J & J Sports Prods., Inc. v. Concepcion*, No. C10-5092 WHA, 2011 WL 2220101, at *4 (N.D. Cal. Jun. 7, 2011); *J & J*

3

*Sports Prods., Inc. v. Juanillo*, No. C10-1801 WHA, 2010 WL 5059539, at *2 (N.D. Cal. Dec. 6, 2010); *J & J Sports Prods., Inc. v. Man Thi Doan*, No. C 08-0324 RMW, 2008 WL 4911223 (N.D. Cal. Nov. 13, 2008). Accordingly, damages will be awarded under 47 U.S.C. § 553 only.

For the single violation of § 553 at issue in this case, Plaintiff is entitled to damages of no less than $250, but no more than $10,000. 47 U.S.C. § 553(c)(3)(A)(ii). The Court has discretion to award the amount it "considers just." *Id.* The Court may also enhance the award of damages by up to $50,000 if it finds that the conduct was "committed willfully and for the purposes of commercial advantage or financial gain." 47 U.S.C. § 553(c)(3)(B). In determining the amount of damages, courts consider any "use of a cover charge, increase in food price during programming, presence of advertising, number of patrons, number of televisions used, and impact of offender's conduct on claimant." *Concepcion*, 2011 WL 2220101, at *4. Repeat offenses by a defendant are also considered. *J & J Sports Prods., Inc. v. Canedo*, No. C09-1488 PJH, 2009 WL 4572740, at *8 (N.D. Cal. Dec. 1, 2009).

Here, there are no allegations of repeat offenses, and no evidence has been submitted of any advertising for the exhibition of the Program. Nor has Plaintiff offered any evidence that the price of food or drink was raised for the occasion, or that any cover charge was required to gain admission to the establishment. Plaintiff's investigator David Palmer notes that when he left, there was no room inside Defendant's establishment, Palmer Aff. at 1, but no evidence has been submitted as to the normal crowd size for Defendant's establishment on a Saturday night or as to whether those patrons were regulars. Although three televisions were used to air the Program, and the number of patrons numbered 51 during one headcount, these factors do not merit an award of maximum statutory damages. *Concepcion*, 2011 WL 2220101, at *4.

Plaintiff argues that enhanced damages for willful conduct are appropriate in this case because there would be no way for Defendant to have "mistakenly, innocently, or accidentally intercepted" the Program, and that Defendant must therefore have engaged in "willful and purposeful acts" to secure the Program without a sub-licensing agreement.

4

Gagliardi Aff. ¶¶ 9, 14. Plaintiff contends that courts have placed "undue weight" on whether programming was promoted or advertised by signal pirates, as opposed to the initial act of piracy, in determining whether damages for willful piracy should be awarded. *Id.* ¶ 14. However, if the mere violation of the statute were "per se willful, then there would be no difference between statutory damages and any willful enhancement." *Guzman*, 2009 WL 1034218, at *3. Furthermore, this Court has held previously that the mere assertion that a defendant acted willfully is insufficient to justify enhanced damages. *Kingvision Pay-Per-View Ltd. v. Backman*, 102 F. Supp 1196, 1198 (N.D. Cal. 2000).

In light of all of the above, the Court finds that a minimal amount of damages would be just in this case. Accordingly, the Court awards the statutory minimum of $250 under 47 U.S.C. § 553 and declines to award enhanced damages.

## II. Conversion

Plaintiff purchased the licensing rights to the Program, and Defendant did not enter into a sub-licensing agreement. Plaintiff seeks damages for the conversion claim in the amount of $2,200, which is what Defendant would have had to pay for the license of the Program from Plaintiff. Gagliardi Aff. ¶ 8 & Ex. 2. "The detriment caused by the wrongful conversion of personal property is presumed to be . . . the value of the property at the time of conversion. . . ." Cal. Civ. Code § 3336. Accordingly, this Court awards $2,200 in damages for conversion.

## III. Attorney's Fees

Reasonable attorney's fees and costs may be awarded under 47 U.S.C. § 553(c)(2)(C). However, Plaintiff has made no request for a specific amount, nor has counsel submitted any documentation of costs, expenses, fees, or rates. Because the record provides no basis for determining a reasonable award, this Court denies Plaintiff's request for costs and attorney's fees, without prejudice.

**CONCLUSION**

Based on all of the above, Plaintiff's motion for default judgment is GRANTED IN PART. Judgment shall be entered in favor of Plaintiff in the amount of $2,450 against Defendant. The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated: 7/5/11

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT